**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| KATHERINE LANKFORD, NECTARIA TRAIL and JASON CANTRELL, individually and on behalf of all others similarly situated, | ) |
| | ) Case No. 3:26-cv-01109 |
| | ) Case No. 3:26-cv-01124 |
| Plaintiffs, | ) Case No. 3:26-cv-01151 |
| | ) |
| v. | ) Judge Aleta A. Trauger |
| | ) |
| YOROZU AUTOMOTIVE TENNESSEE, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

A. The Cyber Incident and Yorozu's Response. ........ 2

B. Plaintiffs' Complaints and Yorozu's Removal Under CAFA. ........ 3

C. The Unrebutted Jeppsson Declaration Shows That No Named Plaintiff Can Fairly Trace Any Harm to *This* Breach. ........ 4

D. Yorozu's Motion for Judgment on the Pleadings and Plaintiffs' Motions to Remand ..... 6

III. ARGUMENT ........ 6

A. Whatever the Court Decides About Remand, It Should First Independently Determine Whether Plaintiffs Have Standing, Beginning With Traceability. ........ 6

1. Plaintiffs Ask the Court to Remand Without Actually Deciding the Jurisdictional Question That Requires Remand. ........ 6

2. *Katz*, *Heaven*, *Brahamsha*, and *Zanotti* Reject Plaintiffs' Shortcut. ........ 7

a. *Katz v. Six Flags*: Courts "cannot simply accept" the parties' positions on jurisdiction. ........ 7

b. *Heaven v. Prime Hydration*: Courts independently review standing before remanding a CAFA-removed data privacy class action. ........ 9

c. *Brahamsha* and *Zanotti*: independent review where the defendant itself challenges standing after a CAFA removal. ........ 10

3. This Case Presents Even Stronger Reasons for Independent Review. ........ 11

4. Sixth Circuit Precedent Supports Independent Review of Standing in a Removed CAFA Case. ........ 14

B. The Unrebutted Evidence Before the Court Disproves Traceability. ........ 16

C. The Jeppsson Declaration Is Properly Before the Court, and Plaintiffs' Rule 12(d) Objection Provides No Basis to Disregard It. ........ 18

1. Rule 12(d) has no application to a factual attack on subject-matter jurisdiction. ........ 18

2. The Declaration is not outside the pleadings. ........ 19

3. If the Court concludes otherwise, the remedy is conversion, not exclusion. ........ 19

D. Plaintiffs Are Not Entitled to Fees Under 28 U.S.C. § 1447(c). ........ 20

1. Removal Under CAFA Was Objectively Reasonable. ........ 21

2. A Removing Defendant Need Not Predict How a Federal Court Will Rule on Article III Standing. ........ 21

3. Removal Is Objectively Reasonable When There Is a Split in or Lack of Authority on a Key Contested Issue. ........ 24

IV. CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Baird v. Norton*, 266 F.3d 408 (6th Cir. 2001) .......... 15
*Brahamsha v. Supercell OY*, 2017 U.S. Dist. LEXIS 110951 (D.N.J. July 17, 2017) .......... passim
*Burt v. Playtika, Ltd.*, 132 F.4th 398 (6th Cir. 2025) .......... passim
*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) .......... 2, 8
*Cumberland Cnty. v. Chemours Co.*, 608 F. Supp. 3d 294 (E.D.N.C. 2022) .......... 7
*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) .......... 12
*Farmer v. Fisher*, 386 Fed. Appx. 554 (6th Cir. 2010) .......... 15
*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) .......... 7, 8
*Gascho v. Glob. Fitness Holdings, LLC*, 918 F. Supp. 2d 708 (S.D. Ohio 2013) .......... 19
*Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007) .......... 11
*Greenstein v. Noblr Reciprocal Exchange*, 2024 U.S. App. LEXIS 21104 (9th Cir. 2024) .......... 17
*Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812 (E.D. Pa. 2025) .......... passim
*Henderson v. Shinseki*, 562 U.S. 428 (2011) .......... 14
*Hickam v. Segars*, 905 F. Supp. 2d 835 (M.D. Tenn. 2012) .......... 18
*Ind. State Dist. Council of Laborers & Hod Carriers Pension Fund v. Renal Care Group, Inc.*, 2005 U.S. Dist. LEXIS 24210 (M.D. Tenn. Aug. 18, 2005) .......... 24
*Katz v. Six Flags Great Adventure, LLC*, 2018 U.S. Dist. LEXIS 135913 (D.N.J. Aug. 13, 2018) .......... passim
*Lott v. Pfizer, Inc.*, 492 F.3d 789 (7th Cir. 2007) .......... 20
*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......... 16
*Martin v. Franklin Cap. Corp.*, 546 U.S. 132 (2005) .......... 20
*Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494 (6th Cir. 2006) .......... 20
*Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910 (N.D. Ill. 2016) .......... passim
*Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238 (6th Cir. 1993) .......... 24
*Penning v. MedicineNet, Inc.*, 2025 U.S. Dist. LEXIS 197879 (N.D. Cal. Oct. 3, 2025) .......... 7, 16
*Polkowski v. Jack Doheny Cos.*, 2025 U.S. Dist. LEXIS 217278 (E.D. Mich. Nov. 4, 2025) .......... 17
*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989) .......... 19
*Smith v. Hogan*, 794 F.3d 249 (2d Cir. 2015) .......... 19
*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......... 9
*Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013) .......... 6
*Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013) .......... 13
*Tanoh v. Dow Chem. Co.*, 561 F.3d 945 (9th Cir. 2009) .......... 13
*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 9
*United States v. Hays*, 515 U.S. 737 (1995) .......... 7
*United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994) .......... 18
*Walker v. Kroger Co.*, 2022 WL 20208929 (N.D. Cal. June 21, 2022) .......... 7
*Zanotti v. Invention Submission Corp.*, 2020 U.S. Dist. LEXIS 97040 (S.D.N.Y. June 2, 2020). 7, 10, 11

**Statutes**

28 U.S.C. § 1447(c) .......... 6, 7
28 U.S.C. §§ 1332(d) .......... 4
28 U.S.C. §§ 1441 .......... 4
28 U.S.C. §§1332(d) .......... 6

TENN. CODE ANN. § 29-34-215(b) .......... 13

**Other Authorities**

*What's the Harm? Federalism, the Separation of Powers, and Standing in Data Breach Litigation*, 96 Ind. L.J. 937, 949 (2021) .......... 25

**Rules**

FED. R. CIV. P. 10(c) .......... 19
FED. R. CIV. P. 12(d) .......... 19

## I. INTRODUCTION

Plaintiffs ask the Court to remand three CAFA-removed class actions without deciding the one question that would justify remand: whether Plaintiffs have Article III standing. They do not dispute that CAFA's requirements were met at the time of removal. They do not contest a single fact in the sworn Jeppsson Declaration, which shows that Plaintiffs' Social Security numbers, emails and passwords were already in criminal hands before the Yorozu incident. And they offer no argument—factual or legal—that any alleged injury is "fairly traceable" to this breach. Instead, they argue that Yorozu's standing challenge, by itself, compels remand, without any further analysis by this Court.

Sixth Circuit precedent forecloses that shortcut. In *Burt v. Playtika, Ltd.*, 132 F.4th 398 (6th Cir. 2025), the court held that it must decide standing even when the parties "elect not to press" it, and it remanded only after determining *for itself* that standing was lacking. Endeavoring to avoid *Burt*'s holding that a court is under an "independent obligation" to analyze standing regardless of the positions taken by the parties, Plaintiffs rely on out-of-circuit district court decisions, led by *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910 (N.D. Ill. 2016). Those decisions remanded CAFA-removed cases without deciding standing, opining that a defendant who challenges standing somehow "abandons" its removal burden under CAFA. Other courts rightly reject that approach, due to settled precedent on a district court's "independent obligation" to analyze standing. Addressing *Mocek* directly, the court in *Katz v. Six Flags Great Adventure, LLC,* held that "a federal court cannot simply accept a stipulation of the parties regarding subject matter jurisdiction—whether it be that jurisdiction does or does not exist—without rendering an affirmative finding on that issue." 2018 U.S. Dist. LEXIS 135913, at *13–14 (D.N.J. Aug. 13, 2018).

*Katz* is the better rule. Article III's limits "'serve institutional interests that the parties cannot be expected to protect.'" *Id.* at *14 (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986)). *Mocek*'s premise that a court should simply skip a standing analysis cannot be squared with *Burt*, which refused to set that analysis aside. The choice between these lines of authority matters here for three reasons. *First*, an answer on traceability decides the forum. If Plaintiffs' injuries are fairly traceable to the Yorozu incident, these cases remain in this Court under CAFA's undisputed grant of jurisdiction; only if they are not does § 1447(c) require remand. Plaintiffs' punitive approach bypasses the one question that determines which outcome is correct. *Second*, the *Mocek* line addressed facial pleading challenges raised "immediately upon removal and without any changed circumstances." Yorozu's challenge, by contrast, is factual, rests on a sworn forensic record completed after removal, and is unrebutted by Plaintiffs. *Third*, and perhaps most importantly, Plaintiffs' analysis-free approach would let any class plaintiff with injury or causation challenges avoid CAFA altogether, simply by suing in state court and declining to defend standing—a result that would be anathema to CAFA's purpose.

The Court should decide traceability on the unrebutted record, and only then apply whatever remedy § 1447(c) requires, if any. Removal was objectively reasonable, particularly in light of *Burt* and *Katz*, and Plaintiffs' fee requests should be denied regardless of the outcome.

## II. STATEMENT OF FACTS

### A. The Cyber Incident and Yorozu's Response.

Between October 9 and October 13, 2024, criminal actors perpetrated a cyberattack on Yorozu's computer network. (*See Lankford* Compl. ¶¶ 4, 19; *Trail* Compl. ¶¶ 6, 8, 32; *Cantrell* Compl. ¶ 38).[1] Yorozu discovered the intrusion on December 19, 2025, and launched a forensic

[1] The *Lankford* matter is presently pending at Case No. 3:26-cv-01109; *Trail* is pending at Case No. 3:26-cv-01124; *Cantrell* is pending at Case No. 3:26-cv-01151.

investigation. (*See Trail* Compl. ¶¶ 6–8, 32). On June 2, 2026, Yorozu began mailing notification letters to affected individuals. (*Id.* ¶ 10). The letters stated that Yorozu had "found no evidence that this information was misused," but Yorozu offered each affected individual one year of credit monitoring and $1 million in identity theft insurance through IDX. (*Id.* ¶ 10, n.7).

**B. Plaintiffs' Complaints and Yorozu's Removal Under CAFA.**

Plaintiffs filed three putative class actions in the Chancery Court for Warren County, Tennessee. (*See Lankford* Compl.; *Trail* Compl.; *Cantrell* Compl.). Lankford, a citizen of Alabama and a former Yorozu employee, sued on behalf of "[a]ll individuals residing in the United States whose Private Information was compromised in the Data Breach." (*Lankford* Compl. ¶¶ 8, 10, 117). Trail and Cantrell, citizens of Tennessee, also sued on behalf of a putative nationwide class. (*Trail* Compl. ¶¶ 20, 98; *Cantrell* Compl. ¶¶ 16, 178).

All three pleadings follow the template ubiquitous to data breach suits: generic sections on the prevalence of data breaches, Federal Trade Commission guidance, and "industry standards" Defendant allegedly failed to follow—without specifying which guidance or standards were breached or any factual basis for the allegation—followed by a cut-and-paste catalogue of "common injuries" untethered to any facts about this breach. (*See Lankford* Compl. ¶¶ 43–100). The instant pleadings cite the same articles that most other data breach lawsuits cite, and there is little to differentiate these Complaints from the many other data breach lawsuits pending around the country. Here, as is common, Yorozu's notice letters prompted the litigation. (*See id.* ¶ 4).[2]

Plaintiffs allege no *actual misuse* of their information—no fraudulent charge, unauthorized

[2] Historically, the issuance of notice has been the green flag that starts the race to the courthouse. Yorozu's notice program began on June 2, 2026. (*See Lankford* Compl. ¶ 4). Sometime thereafter, Lankford received that notice via mail. (*See id.*). Three weeks later, her lawsuit was signed on June 25, 2026, and filed the next day. (*See id.*). Increasingly, plaintiffs are not waiting for the green flag of notice, instead filing suit within days of a threat actor's posting about an attack—long before the affected organization has completed its incident response, and before plaintiffs know whether their own information was even involved.

account, or identity theft. (*See Lankford* Compl. ¶¶ 101–116; *Trail* Compl. ¶¶ 86–97; *Cantrell* Compl. ¶¶ 56–73). They rely instead on the generalized "harms" alleged in every data breach suit: increased spam, time spent monitoring accounts, anxiety, and risk of future harm. (*See id.*). Trail alleges that she "diligently chooses unique usernames and passwords," (*Trail* Compl. ¶ 91), an allegation the record disproves. (*See* Jeppsson Decl. ¶ 14). Lankford and Cantrell allege, without any plausible detail, that their information has been or will be published on the dark web. (*Lankford* Compl. ¶ 106; *Cantrell* Compl. ¶ 65). The absence of any concrete misuse is telling. The incident occurred in October 2024—*two years ago.* (*See Lankford* Compl. ¶ 4). The fact that Plaintiffs have not experienced a fraudulent charge or other specific indicia of identity theft makes their claimed damages all the more speculative, given that gap in time.

Yorozu removed each action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1441). *Lankford* was removed on August 5, 2026, *Trail* on August 7, 2026, and *Cantrell* on August 12, 2026.[3]

### C. The Unrebutted Jeppsson Declaration Shows That No Named Plaintiff Can Fairly Trace Any Harm to *This* Breach.

Each Complaint, while over two hundred paragraphs long, gives short shrift to *causation*—the very issue Plaintiffs now ask the Court to ignore. Whether cast as causation or traceability, the concept is barely even mentioned in their pleadings.

Yorozu retained Pierre Jeppsson, Director of Cyber Threat Investigations at Ankura, to investigate whether Plaintiffs' personal information had been compromised in breaches unrelated to the Yorozu incident. (*See* Jeppsson Decl. ¶¶ 1–5). Jeppsson identified Yorozu as a victim of the RansomHub threat actor, whose dark web leak site was last active in March 2025. (*Id.* ¶ 5). He

[3] After these removals, the plaintiffs in a fourth action, *Anderson*, amended their complaint to limit the class to Tennessee residents, so as to defeat CAFA removability in that matter. (*See* MJOP Br. at 4 n.5).

found no evidence that any data from the Yorozu incident was published or sold on the dark web. (*Id.*). Critically with respect to traceability, Jeppsson found that each Plaintiff's information had been widely compromised before the Yorozu incident. (*See id.*).

*Lankford.* Lankford's Social Security number was exposed in the National Public Data breach in December 2023, nearly a year before the Yorozu incident. (*Id.* ¶ 6). This stolen data was offered for sale in April 2024 and *published for free* in July and August 2024. (*Id.*). Anyone with a working knowledge of the dark web can now find it. Lankford's two email addresses were compromised in six other known breaches between 2017 and 2020. (*Id.* ¶¶ 9–10). Her name, prior names, date of birth, phone numbers, addresses, email addresses, court records, and social media profiles are publicly available through open-source intelligence. (*Id.* ¶¶ 6–10).

*Trail.* Trail's Social Security number was also exposed in the National Public Data breach in December 2023. (*Id.* ¶ 11). Her three email addresses were compromised in numerous other breaches, and her phone numbers and email addresses were publicly available long before the Yorozu incident. (*Id.* ¶¶ 11–14). Of sixteen leaked credentials associated with one of her email addresses, fifteen used the *same plaintext* (i.e., weak) password. (*Id.* ¶ 14).

*Cantrell.* Cantrell's Social Security number was likewise exposed in the National Public Data breach in December 2023. (*Id.* ¶ 15). His two email addresses appear in ten and nineteen known breaches, respectively, dating back to 2008. (*Id.* ¶¶ 15–17). The leaked credentials associated with those addresses consist overwhelmingly of a small number of weak, reused plaintext passwords. His name, date of birth, phone numbers, addresses, property records, email addresses, social media profiles, and family information are publicly available. (*Id.* ¶¶ 15–17).

Jeppsson's Declaration was executed on September 10, 2026, over one month after each case had been removed. (*See Lankford*, DE 8-1; *Trail*, DE 13-1; *Cantrell*, DE 9-1).

### D. Yorozu's Motion for Judgment on the Pleadings and Plaintiffs' Motions to Remand.

On September 16, 2026, Yorozu answered each complaint, attaching the Jeppsson Declaration as an exhibit to its Answer. (*See Lankford*, DE 8, 8-1; *Trail*, DE 13, 13-1; *Cantrell*, DE 9, 9-1). Yorozu also filed its Motion for Judgment on the Pleadings. (*See Lankford*, DE 9, 10; *Trail*, DE; *Cantrell*, DE 10, 11). Yorozu asserts that Plaintiffs lack Article III standing because their alleged injuries are not fairly traceable to the Yorozu incident. (MJOP Mem. at 8–20). This is a factual challenge, since Yorozu relies upon Jeppsson's Declaration. (*Id.* at 7–8). Alternatively, if standing exists, Yorozu argues that the negligence *per se*, implied contract, unjust enrichment, and invasion of privacy claims fail under Rule 12(c). (*Id.* at 21–25).

On September 30, 2026, Plaintiffs filed the present motions, each combining a motion to remand, an opposition to the MJOP, and a request for fees under 28 U.S.C. § 1447(c). (*See* Pl.'s Br.). Plaintiffs argue that because Yorozu bears the removal burden and contends that Plaintiffs lack standing, remand is required. (*Id.* at 3–6). They submit no evidence, dispute no fact in the Jeppsson Declaration, and offer no argument that any harm is "fairly traceable" to this breach. (*See id.*). Nor do they contend that CAFA's requirements were unmet at removal.[4] Their sole argument is that Yorozu's standing challenge—by itself—requires remand. (*See id.*).

## III. ARGUMENT

### A. Whatever the Court Decides About Remand, It Should First Independently Determine Whether Plaintiffs Have Standing, Beginning with Traceability.

#### 1. Plaintiffs Ask the Court to Remand Without Actually Deciding the Jurisdictional Question That Requires Remand.

Plaintiffs' motions rest on a single premise: because Yorozu questions their standing, the

[4] "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. §§1332(d)(2), (5)(B)). These elements were met at the time of removal—a point Plaintiffs do not contest.

Court should remand without deciding whether they have it. They rely exclusively on out-of-circuit district court decisions that remanded without analyzing standing. (Pl.'s Br. at 4–6 (citing *Mocek,* 220 F. Supp. 3d 910; *Walker v. Kroger Co.*, 2022 WL 20208929 (N.D. Cal. June 21, 2022); *Cumberland Cnty. v. Chemours Co.*, 608 F. Supp. 3d 294 (E.D.N.C. 2022); *Penning v. MedicineNet, Inc.*, 2025 WL 2814586 (N.D. Cal. Oct. 3, 2025)).

Yorozu does not dispute that *if* Plaintiffs lack Article III standing, *then* § 1447(c) supports remand. *See Burt*, 132 F.4th at 406. *The question is what the Court must do before it reaches that remedy*. Section 1447(c) applies when "it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). It does not permit a court to infer that answer from the parties' litigation posture. Federal courts "are under an *independent obligation* to examine their own jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'" *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)) (emphasis added). Although district courts outside this Circuit are divided, binding Sixth Circuit precedent and the better-reasoned decisions should convince the Court to decide standing—here, traceability—before ruling on remand.[5]

**2. *Katz*, *Heaven*, *Brahamsha*, and *Zanotti* Reject Plaintiffs' Shortcut.**

**a. *Katz v. Six Flags*: Courts "cannot simply accept" the parties' positions on jurisdiction.**

*Katz* arose in a similar posture as the instant dispute. The plaintiff filed a class action in state court. The defendants removed under CAFA and moved to dismiss for lack of standing. *Katz*, 2018 U.S. Dist. LEXIS 135913, at *5–6 & n.2. The plaintiff responded the way Plaintiffs do here.

[5] Should the Court disagree with Yorozu's arguments on traceability and injury in fact—despite Plaintiffs declining to brief those questions—then standing exists, and remand would be inappropriate. This is one of several reasons why a ruling on traceability matters. Should standing exist, the appropriate next step would be a ruling on Yorozu's failure to state a claim arguments, which Plaintiffs have now fully briefed. (*See* Pl.'s Br. at 8-15). Should the Court require, Yorozu will file a short reply brief on those arguments.

He "t[ook] no position on the issue of Article III standing" and argued that the court should "remand the matter without rendering a finding on the issue of Article III standing." *Id.* at *7, *12.

The *Katz* court disagreed. Addressing *Mocek* directly, the court observed that *Mocek* "found that where no party contests the lack of Article III standing in a removal case, a federal court may remand the matter without rendering a finding." *Id.* at *13 (citing *Mocek*, 220 F. Supp. 3d at 912). The court cautioned, however, that "such an approach raises interesting questions regarding the settled principles of limited jurisdiction that govern federal courts." *Id.* "Indeed, even where neither party raises an issue of subject matter jurisdiction, 'federal courts are under an independent obligation to examine their own jurisdiction …'" *Id.* (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). Because standing cannot be waived and courts have an independent duty to examine it, the court held:

> [A] federal court cannot simply accept a stipulation of the parties regarding subject matter jurisdiction — whether it be that jurisdiction does or does not exist — without rendering an affirmative finding on that issue.

*Id.* at *13–14. The court grounded its holding on the Supreme Court's instruction that "[w]hen Article III limitations are at issue, *notions of consent and waiver cannot be dispositive* because the limitations serve institutional interests that the parties cannot be expected to protect." *Id.* at *14 (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986)) (emphasis added). It found the need for an affirmative finding stronger where, as here, the plaintiff "does not go so far as conceding that he lacks Article III standing; he simply takes no position on the issue." *Id.* The court held that, "because, as detailed, *infra*, I find that Article III standing is lacking in this case, I am not remanding this case based solely on the fact that no party contests the lack of Article III standing." *Id.* Instead, the court analyzed whether the plaintiff actually had standing to sue.

The need for an affirmative finding is greater still where "the relief sought by both parties

— remand or dismissal — *is predicated on a finding that subject matter jurisdiction is lacking*." *Id.* at *14 n.5 (emphasis added). Neither remedy can be entered without first deciding that question.

**b. *Heaven v. Prime Hydration*: Courts independently review standing before remanding a CAFA-removed data privacy class action.**

*Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812 (E.D. Pa. 2025), applied the same principle to a CAFA-removed *data privacy class action*.[6] The defendant removed under CAFA and moved to dismiss for lack of Article III standing. *Id.* at 815. As here, the plaintiff took "no position on whether this Court has Article III standing," argued that the defendant could not carry its removal burden while challenging standing, and did not dispute CAFA's statutory requirements. *Id.* at 816, 817 n.2.

The *Heaven* court rejected the argument Plaintiffs now make—that "the analysis should end" because the defendant "cannot meet its burden to show this case is properly before a federal court while simultaneously arguing that Plaintiff lacks Article III standing." *Id.* at 817. It acknowledged the contrary line of cases—*Mocek*, *Walker*, and *Barnes*, on which Plaintiffs rely—but instead found "persuasive the line of cases that has proceeded to analyze Article III standing in similar circumstances," adopting *Katz*'s holding that a court "cannot simply accept a stipulation of the parties regarding subject matter jurisdiction." *Id.* at 817 & n.3 (quoting *Katz*, 2018 WL 3831337, at *5). "[M]indful of a district court's independent obligation to examine subject-matter jurisdiction," the court applied *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), and *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), concluding that the plaintiff "lack[ed] Article III standing." Only then did it remand. *Id.* at 817–21.

---

[6] *Heaven* was a "pixel" case, where the plaintiff alleged that the defendant had integrated a "Google Analytics Pixel into its website," and thus retained his private information without his consent. *See id.* at 815-816. Pixel cases are adjacent to data breach cases, often involve the same counsel, and usually entail similar issues on standing.

c. ***Brahamsha* and *Zanotti*: independent review where the defendant itself challenges standing after a CAFA removal.**

Other CAFA courts refuse to remand without analyzing standing first. In *Brahamsha v. Supercell OY*, 2017 U.S. Dist. LEXIS 110951 (D.N.J. July 17, 2017), the defendant removed a putative class action under CAFA and moved to dismiss, in the alternative, for lack of Article III standing. *Id.* at *4. The plaintiff cross-moved for remand and fees, arguing—just as Plaintiffs do here—that "given *Defendant's position* that Plaintiff lacks Article III standing," the court had "no subject matter jurisdiction over the case," and "Defendant lacked a reasonable basis to remove the case to federal court in the first instance." *Id.* at *4–5 (emphasis in original). The court disagreed, holding that it "would be required to evaluate Plaintiff's Article III standing to sue even if the parties had failed to raise it in their motions," because "[t]he federal courts are under an independent obligation to examine their own jurisdiction." *Id.* at *5–6 (quoting *Hays*, 515 U.S. at 742). The court found that the plaintiff lacked standing and only then remanded. *Id.* at *2, *8-14.[7]

*Zanotti v. Invention Submission Corp.*, 2020 U.S. Dist. LEXIS 97040 (S.D.N.Y. June 2, 2020), is closer still—it rejected Plaintiffs' proposed shortcut *on a traceability challenge*. The defendants removed under CAFA, no party disputed that CAFA's requirements were met, and the defendants then moved to dismiss because the named plaintiffs had not alleged an injury "fairly traceable" to their conduct. *Id.* at *3, *16–17. The plaintiffs argued, as Plaintiffs do here, that the defendants had "ipso facto renounced their claim of subject matter jurisdiction by virtue of their motion to dismiss for lack of Article III standing, and remand is mandatory." *Id.* at *21–22.

The court acknowledged the *Mocek* line of cases but found them unpersuasive. *Id.* at *22–23. Reasoning that "Article III standing is not waiveable," it adopted *Katz*'s rule that a court "'cannot simply accept a stipulation of the parties regarding subject matter jurisdiction.'" *Id.* at

[7] The court also denied plaintiff's motion for fees. *Id.* at *15–20.

*23–24 (quoting *Katz*, 2018 WL 3831337, at *5). Because the plaintiffs "neither concede[d] that they lack standing nor present[ed] a cogent argument that standing exists," the court conducted "an independent review of its subject matter jurisdiction." *Id.* at *22, *24. It then held that the plaintiffs' injuries were not traceable to the defendants. *Id.* at *24–27.

Plaintiffs' posture matches *Zanotti*'s exactly. They do not concede that they lack standing. They assert—without plausible detail—that they have been "substantially harmed," yet decline to defend their standing. (Pl.'s Br. at 6). Plaintiffs' brief does not even mention traceability. And like *Zanotti*, this is a CAFA case in which the dispositive element is traceability.

**3. This Case Presents Even Stronger Reasons for Independent Review.**

*Katz* is the better-reasoned approach because it honors the Court's "independent obligation" to examine its jurisdiction; *Mocek* does not. And several features of this case make independent review especially warranted.

*First*, the record here is evidentiary, not just a pleading. Both *Katz* and *Heaven* decided standing on the face of the complaint, accepting its allegations as true. *Katz*, 2018 U.S. Dist. LEXIS 135913, at *2 n.1; *Heaven*, 761 F. Supp. 3d at 815 n.1. Yorozu's challenge to traceability is factual. It rests on the sworn Declaration of Jeppsson, who searched the dark and clear web and found each Plaintiff to have been previously impacted by a host of unrelated data breaches. (*See* Jeppsson Decl.). On a factual attack, "no presumptive truthfulness applies" to a complaint's allegations, "the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist," and "the district court has wide discretion to allow affidavits" to resolve jurisdictional facts. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). An evidentiary record is what a court needs to make the "affirmative finding" that *Katz* requires. 2018 U.S. Dist. LEXIS 135913, at *14.

The *Mocek* line, by contrast, involved defendants who facially attacked the pleading "immediately upon removal and *without any changed circumstances*." *Walker*, 2022 WL 20208929, at *2 (emphasis added); *Penning*, 2025 WL 2814586, at *3; *Mocek*, 220 F. Supp. 3d at 911. Not so here. Yorozu raised standing only after Jeppsson completed his work and executed his Declaration on September 10, 2026, well after removal. (*See* Jeppsson Decl.). Those are "changed circumstances" not present in *Mocek*.[8]

*Second*, the traceability question here is significant and recurring. *Katz* and *Heaven* involved narrow injury-in-fact questions: a credit card receipt displaying extra digits, and website drink-flavor searches. *Katz*, 2018 U.S. Dist. LEXIS 135913, at *4; *Heaven*, 761 F. Supp. 3d at 820. The instant dispute asks whether a plaintiff can fairly trace alleged injuries to a particular breach when the same information was already compromised repeatedly in earlier, unrelated breaches. Although *facial* traceability challenges are routine in data breach cases, relatively few decisions address *factual* challenges. More than two dozen data privacy class actions are presently pending in this District alone. A ruling here would not just dictate where this case goes but also provide precedent in the data breach space on a question where such precedent is needed.

*Third*, deciding traceability serves CAFA's purpose. Congress enacted CAFA "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "As this description of the Act's purposes makes clear, CAFA was designed primarily to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in

---

[8] Plaintiffs' point that Jeppsson began his work before removal is the epitome of a red herring. (Pl.'s Br. at 15). Beginning an investigation is not the same as completing it, let alone drafting and executing a sworn declaration (which Jeppsson did himself). It was reasonable for Yorozu to engage a cybersecurity expert at the outset of a putative nationwide class action—and equally reasonable to await the results before deciding which arguments to present to the Court.

state courts." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009). Its "*primary objective*" is "ensuring 'Federal court consideration of interstate cases of national importance.'" *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (quoting § 2(b)(2), 119 Stat. 5) (emphasis added).[9] The instant case is a nationwide class action. CAFA's purpose is best fulfilled not by bypassing an analysis of whether standing—and particularly traceability—is present, but instead by ensuring this federal Court's consideration of those issues.[10]

*Fourth*, remanding without addressing traceability—simply because Yorozu had the temerity to question it—would significantly undercut CAFA. Under Plaintiffs' proposed rule, a CAFA-removing defendant that invites judicial scrutiny of standing should be punished with remand and fees—without the question of standing even being analyzed. That rule would deter defendants from removing otherwise removable class actions and force them to choose between their statutory right to remove and their right to challenge standing. That cannot be the law. Worse still, such a result would give class plaintiffs a roadmap to escape CAFA's reach. The approach Plaintiffs propose would allow a class plaintiff—particularly one who is filing suit without evidence of a concrete injury caused by the event at issue—to avoid CAFA altogether by suing in state court and declining to defend standing. This would result would gut CAFA's purpose.

*Fifth*, deciding traceability is not academic merely because a finding against standing

---

[9] The *Standard Fire* Court found this purpose of CAFA to be so important as to deny remand, even when the plaintiff *stipulated* "that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total," holding such a stipulation insufficient to "remove the case from CAFA's scope." *Std. Fire*, 568 U.S. at 590.

[10] Plaintiffs' discussion of Tennessee's Cyber Security Safe Harbor statute only highlights this point. In response to the flood of data breach class actions, the Legislature tried to raise the bar on what a plaintiff must show to proceed in such cases. The Act holds that a "private entity is not liable in a class action lawsuit resulting from a cybersecurity event unless the cybersecurity event was caused by willful and wanton misconduct or gross negligence on the part of the private entity." TENN. CODE ANN. § 29-34-215(b). As Plaintiffs' brief notes, Tennessee courts have declined to utilize that statute to put any guardrails on what a plaintiff must plead in order for a data breach class action to move forward. (*See* Pl.'s Br. at 10-11). Data breach class actions are precisely the type of serial litigation the framers of CAFA wished to address.

would lead to remand. The ruling determines where these cases will be litigated. Plaintiffs do not dispute that CAFA's requirements are met. (*See* Pl.'s Br.). If Plaintiffs' injuries are fairly traceable to the Yorozu incident, then these suits remain here; only if they are not traceable does § 1447(c) require remand. Plaintiffs skip the one question that determines which outcome is correct (and hand class plaintiffs an easy route around CAFA). The Sixth Circuit rejects that shortcut, refusing to "leave for another day the issue of whether Burt has Article III standing" even though deciding it led only to remand. *Burt*, 132 F.4th at 403, 405–06. )

*Sixth*, Plaintiffs offer nothing in response on traceability. They submit no evidence, dispute no fact in the Jeppsson Declaration, offer no law on traceability, and make no argument that this breach caused their harm. (*See* Pl.'s Br. at 6). A plaintiff who "simply takes no position" cannot convert that silence into a jurisdictional ruling. *Katz*, 2018 U.S. Dist. LEXIS 135913, at *14.

**4. Sixth Circuit Precedent Supports Independent Review of Standing in a Removed CAFA Case.**

The *Katz*, *Heaven*, and *Brahamsha* courts had no controlling circuit authority on this question. *Katz*, 2018 U.S. Dist. LEXIS 135913, at *19; *Heaven*, 761 F. Supp. 3d at 817; *Brahamsha*, 2017 U.S. Dist. LEXIS 110951, at *18-19. This Court does. In *Burt*, the defendant removed a putative class action from Tennessee state court under CAFA and traditional diversity jurisdiction. 132 F.4th at 401. The district court remanded on statutory grounds without analyzing standing. *Id.* at 401, 403. On appeal, the plaintiff asserted standing only "in passing," and the defendant "d[id] not address the issue in its briefs." *Id.* at 403.

The Sixth Circuit nonetheless held that it had "an independent duty to ensure that we do not exceed the bounds of our jurisdiction and therefore 'must raise and decide jurisdictional questions that the parties either overlook or elect not to press.'" *Id.* (quoting *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)). It explained that "subject matter jurisdiction also requires that the

plaintiff have Article III standing to assert her claims in federal court," even where CAFA's statutory requirements are in dispute. *Id.* at 402–03. It analyzed the elements of standing, concluded that the plaintiff had suffered no injury in fact, and only then affirmed remand. *Id.* at 403–06. The court rejected the defendant's request to decide the statutory questions and "leave for another day the issue of whether Burt has Article III standing." *Id.* at 403, 405–06. It relied on the same principle *Katz* applied: "we have an independent obligation to examine our jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'" *Id.* at 406 (quoting *Baird v. Norton*, 266 F.3d 408, 410 (6th Cir. 2001)). And it framed the remand rule in terms of the court's own determination: "when, as here, *the court itself determines* that the plaintiff lacks Article III standing, it must remand to the district court with instructions to return the case to state court." *Id.*

*Burt* defeats Plaintiffs' motions in three respects. First, the parties' positions do not control. The duty to decide standing reaches "jurisdictional questions that the parties either overlook or elect not to press." *Id.* at 403. That is the Sixth Circuit's counterpart to *Katz*'s rule that "notions of consent and waiver cannot be dispositive." 2018 U.S. Dist. LEXIS 135913, at *14. Plaintiffs' refusal to defend traceability is a choice not to press the issue, and under *Burt* it cannot take the place of a judicial determination.[11]

Second, a judicial determination on standing is a prerequisite for remand. The Sixth Circuit did not remand because a party had questioned standing. It remanded because it determined, on its own analysis, that the plaintiff lacked standing. 132 F.4th at 406. Plaintiffs themselves describe *Burt* as a case in which the Sixth Circuit, "raising the issue on its own, directed remand . . . because the plaintiff lacked Article III standing." (Pl.'s Br. at 6). That is the sequence *Katz* and *Heaven*

[11] *See also Farmer v. Fisher*, 386 Fed. Appx. 554, 556 (6th Cir. 2010) ("federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*.").

followed, and it is the sequence Yorozu asks the Court to follow here.

Third, the shortcut in Plaintiffs' out-of-circuit cases is foreclosed. *Penning* declined to "supply its own independent reasoning as to why a plaintiff might have standing when the defendant affirmatively argues that the plaintiff does not, and the plaintiff does not oppose those arguments." *Penning v. MedicineNet, Inc.*, 2025 U.S. Dist. LEXIS 197879, *9 (N.D. Cal. Oct. 3, 2025). *Burt* did the opposite, raising and deciding standing even though one party never addressed it. 132 F.4th at 403. *Mocek* relied on Seventh Circuit authority giving courts "leeway to choose among threshold grounds." 220 F. Supp. 3d at 912. That reasoning cannot be reconciled with *Burt*, which refused to skip Article III standing to resolve other threshold questions. 132 F.4th at 406. *Katz*, too, declined to follow *Mocek* as in tension with "the settled principles of limited jurisdiction that govern federal courts." 2018 U.S. Dist. LEXIS 135913, at *13.

**B. The Unrebutted Evidence Before the Court Disproves Traceability.**

To establish Article III standing, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable decision. *Burt*, 132 F.4th at 403. On the second element, "'there must be a causal connection between the injury, and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant,'" not the result of the independent action of some third party not before the court. *Katz*, 2018 U.S. Dist. LEXIS 135913, at *14–15 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The absence of any element defeats jurisdiction. The Court may resolve standing on the element the record most clearly decides. *Katz* and *Heaven* decided standing on the element the record presented—injury in fact. *Katz*, 2018 U.S. Dist. LEXIS 135913, at *15; *Heaven*, 761 F. Supp. 3d at 818. Here, that element is traceability.

The Jeppsson Declaration establishes key facts, none of which Plaintiffs contest. Each

Plaintiff's Social Security number was in criminal hands before the Yorozu incident. Their contact information was already circulating through numerous prior breaches and public sources. No data from the Yorozu incident has surfaced in the nearly two years since. (Jeppsson Decl. ¶¶ 5–17). Plaintiffs offer no factual or legal response. On this record, they cannot show that any alleged injury is fairly traceable to the Yorozu incident. The Court should make that "affirmative finding," *Katz*, 2018 U.S. Dist. LEXIS 135913, at *14, and only then apply the remedy § 1447(c) prescribes. *Burt*, 132 F.4th at 406.[12]

While decisions addressing factual challenges to traceability in data breach cases are relatively few, one in this circuit found traceability lacking on a comparable factual record. In *Polkowski v. Jack Doheny Cos.*, the plaintiff's allegations "narrowly survived" a facial attack, but on a factual attack a cybersecurity investigator's declaration documenting prior breach exposure showed that he could not attribute his injuries to the defendant. 2025 U.S. Dist. LEXIS 217278, at *15–20 (E.D. Mich. Nov. 4, 2025). The Ninth Circuit likewise held in *Greenstein v. Noblr Reciprocal Exchange* that, given the evidentiary record showing plaintiff had been impacted by prior unrelated breaches, there was "*strong evidence* that the attackers already possessed personal information about" plaintiff before the breach at issue; thus plaintiff had "failed to prove that her injuries stem from 'the challenged action of the defendant, and not the independent action of some third party not before the court.'" 2024 U.S. App. LEXIS 21104, at *8–9 (9th Cir. 2024) (quoting

[12] By their approach to remand, Plaintiffs have placed themselves on the horns of a dilemma. Argue traceability, and they may end up staying in federal court, where they do not want to be. Remain silent, and they risk a ruling on causation that impacts this case, and others. They may deem it wise to, belatedly, address traceability in their reply, rather than risk the Court ruling on the substance of this question while they remain silent. Or they may change course and aver, belatedly, that they need jurisdictional discovery under Rule 56(d). Should Plaintiffs choose to address traceability in their reply or ask for discovery on it, doing so can only be deemed a concession that: (1) the Court can and should rule on this question, and (2) their fee motion is meritless.

*Lujan*, 504 U.S. at 560–61) (emphasis added). Plaintiffs ignore both decisions.[13]

**C. The Jeppsson Declaration Is Properly Before the Court.**

Further highlighting their unwillingness to substantively confront traceability, Plaintiffs ask the Court to ignore Jeppsson's Declaration because it is a "matter[] outside the pleadings." (Pl.'s Br. at 9–10). That objection fails for three independent reasons: it does not apply to Yorozu's factual challenge to standing, the Declaration is not outside the pleadings, and even if it were, the remedy Rule 12(d) prescribes is conversion to summary judgment, not exclusion.

**1. Rule 12(d) has no application to a factual attack on subject-matter jurisdiction.**

Plaintiffs' objection is confined to their opposition to "any dismissal under Rule 12(c)," rather that remand for lack of subject matter jurisdiction. (Pl.'s Br. at 8). Every authority they cite addresses whether a court may consider extrinsic material in testing the facial sufficiency of a claim. (*Id.* at 9–10). A challenge to subject-matter jurisdiction may be either *facial* or *factual*. *Gentek*, 491 F.3d at 330. On a factual attack, "no presumptive truthfulness applies to the allegations," and the Court "must weigh the conflicting *evidence* to arrive at the factual predicate that subject-matter does or does not exist." *Id.* at 330 (emphasis added). The Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), and it "has wide discretion" to consider affidavits and other documents. *Gentek*, 491 F.3d at 330.[14] Considering evidence on a factual attack does not convert a declaration into anything; it is how jurisdictional facts are found.

Plaintiffs do not dispute that Yorozu mounts a factual attack to traceability. (Pl.'s Br. at 15;

[13] "Defendants' Motion to Dismiss for lack of subject matter jurisdiction and Plaintiff's Motion to Remand are largely intertwined." *Katz,* 2018 U.S. Dist. LEXIS 135913, *6. Yorozu's factual and legal arguments on why traceability is lacking are discussed in greater depth in its MJOP brief.

[14] *See also Hickam v. Segars,* 905 F. Supp. 2d 835, 838 (M.D. Tenn. 2012) (Trauger, A.) (citing *Gentek*, 491 F.3d at 330) ("when considering a factual attack upon the court's jurisdiction, the court may weigh the evidence" and has "wide discretion" to consider extrinsic evidence).

*see also id.* at 15 n.4). Having conceded the challenge as factual, Plaintiffs cannot ask the Court to evaluate it as though it were limited to the face of the Complaints. And the Court's obligation to assure itself of its own jurisdiction is not one that a pleading rule can or should displace.

**2. The Jeppsson Declaration is not outside the pleadings.**

The Jeppsson Declaration was filed as an exhibit to Yorozu's Answers. (*See Lankford* DE 8-1; *Trail* DE 13-1; *Cantrell* DE 9-1). Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). Plaintiffs concede that "[t]here is no uniform rule among the circuits" on whether a declaration so attached may be considered, (*see* Pl.'s Br. at 9), and the out-of-circuit decisions they cite do not bind this Court. (*See id.* at 9–10 (citing *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989), and *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015)). Their lone in-circuit authority excluded attachments to an answer only because the plaintiffs there presented a "reasonable basis to question the validity, accuracy, or completeness" of those documents. (Pl.'s Br. at 10) (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 720 (S.D. Ohio 2013)). Plaintiffs offer nothing of the kind here. They do not challenge a single finding in the Declaration.

**3. If the Court concludes otherwise, the remedy is conversion, not exclusion.**

Even if the Declaration were outside the pleadings, which it is not, Plaintiffs' argument would not permit the Court to ignore it. Rule 12(d) provides that when matters outside the pleadings are presented on a Rule 12(c) motion and "not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," with "a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). The Sixth Circuit has held "that the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a motion for

summary judgment." *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006). Plaintiffs themselves acknowledge that conversion is the consequence. (Pl.'s Br. at 9).

Conversion is not necessary under Rule 12(d) because, as this Court has held before, extrinsic evidence can be considered on a facial attack to jurisdiction; and in any event, the Jeppsson Declaration is an exhibit to the pleadings and thus part of them. That said, should the Court convert this motion to a summary judgment motion, the result is the same—the unrebutted record shows a lack of traceability. Plaintiffs have already had a reasonable opportunity to respond. The Declaration was filed with Yorozu's Answers on September 16, 2026. Plaintiffs filed their combined response two weeks later and chose to submit nothing: no declaration from any Plaintiff, no expert finding, and no Rule 56(d) motion opining that they cannot present facts essential to their opposition. Plaintiffs' objection is an argument about labels, not substance, and gives the Court no reason to disregard unrebutted evidence.

### D. Plaintiffs Are Not Entitled to Fees Under 28 U.S.C. § 1447(c).

Even if the Court remands, it should deny Plaintiffs' requests for fees and costs. (Pl.'s Br. at 14–15). Plaintiffs move for fees, even though their motion (albeit obliquely) recognizes that there is a line of cases rejecting *Mocek* and fully analyzing standing challenges in CAFA-removed cases. (*See id.* at 6). Given this split in authority and the absence of controlling circuit authority, Plaintiffs' position on fees is particularly weak. "*Absent unusual circumstances*, courts may award attorney's fees under § 1447(c) *only* where the removing party lacked an *objectively reasonable basis* for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Splits in legal authority at the time of removal render removal objectively reasonable. *See Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007) ("if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees"). The question is whether removal was

reasonable when made, not whether the case ultimately stays in federal court.

**1. Removal Under CAFA Was Objectively Reasonable.**

Yorozu's Notices of Removal set out each of CAFA's jurisdictional requirements. (*See* Def.'s Notice of Removal ¶¶ 11, 16–32). Plaintiffs do not dispute any of them and expressly disclaim any CAFA exception. (*See* Pl.'s Br. at 7) ("Plaintiff does not seek remand under any CAFA exception"). A removing defendant need only provide "a short and plain statement of the grounds for removal." *Dart,* 574 U.S. at 87. Where the plaintiff does not contest the defendant's CAFA allegations, that silence alone requires the denial of fees:

> Plaintiff does not contest Defendant's CAFA basis for removal, so the Court accepts Defendant's allegations as true, without the need for evidentiary support. Accordingly, looking to Defendant's CAFA allegations, Defendant possessed an objectively reasonable basis for removal of this case before this Court.

*Brahamsha*, 2017 U.S. Dist. LEXIS 110951, *16-17 (citing *Dart Cherokee*, 135 S. Ct. at 553). Courts in the same posture as the instant dispute, where a defendant removes under CAFA and then challenges Article III standing, routinely deny fees on this basis. *See Heaven*, 761 F. Supp. 3d at 822 (denying fees because the motions "involved an analysis of multiple unsettled areas of law"). This includes cases cited in Plaintiffs' brief. *See Walker*, 2022 U.S. Dist. LEXIS 243332, at *6–7 (denying fees where the plaintiff did "not dispute that this case satisfies the statutory grounds for CAFA removal" and "other courts have considered and granted motions to dismiss for lack of standing following removal").

**2. A Removing Defendant Need Not Predict How a Federal Court Will Rule on Article III Standing.**

The punitive approach Plaintiffs demand would put future defendants in an impossible position—forgo removal having only recently learned about a nationwide class action that is otherwise removable on the *chance* that the federal court may find that standing is lacking; or

preserve their rights, remove a removable case within thirty days of service, assert standing as one of several alternative arguments, but only at the risk of being hit with fees if they are wrong about standing. This is not the law. Nor should it be, given the problem CAFA sought to address—i.e., gamesmanship, abuses and unfairness in state court class action litigation.

Plaintiffs' fee request rests almost entirely on *Mocek* and *Barnes*. (Pl.'s Br. at 15). Those cases have since been criticized, and rightly so. *Brahamsha* considered *Mocek* on a fee motion arising in the same posture and flatly "disagree[d] with the district court's analysis." 2017 U.S. Dist. LEXIS 110951, at *17–18. It explained that *Mocek* "did not focus on the appropriate threshold question of whether Defendant possessed an objectively reasonable basis for the removal, instead looking to whether the defendant should have anticipated that once removed under CAFA, subject matter jurisdiction would subsequently be defeated by the lack of standing." *Id.* at *18–19. The court then rejected the premise of Plaintiffs' fee requests:

> *I do not find it to be incumbent upon Defendant, after having been hailed into state court, to anticipate how this Court would rule on a Rule 12(b)(1) motion in a currently developing area of law*, post-*Spokeo*, which applies a complaint-specific factual analysis. If, for example, this Court were to find that Plaintiff did plead actual injury, then the case would have proceeded in federal court because Plaintiff has not contested this Court's subject matter jurisdiction under CAFA. Because Defendant could not ask the state court to render an advisory opinion as to whether Plaintiff's pleadings satisfied Article III, post-Spokeo, the only way for Defendant to have its claims heard in the federal courts, as it is admittedly entitled to do under CAFA, without conceding actual injury, was to act as it did and remove first and then move to dismiss under Rule 12(b)(1).

*Id.* at *19–20 (emphasis added). The court concluded that, "absent any controlling precedent rendering the basis for Defendant's removal 'frivolous' or 'insubstantial,' this Court finds that Defendant articulated an objectively reasonable basis for removal under CAFA," and fees were inappropriate. *Id.* at *20 (quoting *Martin*, 546 U.S. at 141).

That reasoning applies with greater force here. The standing question presented to this Court is more fact-specific than in *Brahamsha*. Whether each named Plaintiff's alleged injuries are fairly traceable to the Yorozu incident, as opposed to the many prior breaches that exposed the same information, cannot be answered from the face of a complaint. This question turns on a forensic investigation of each Plaintiff's exposure history. (*See* Jeppsson Decl. ¶¶ 5–17).

Yorozu had to decide whether to remove within thirty days of service. *See* 28 U.S.C. § 1446(b)(1). Missing that deadline would have forfeited the federal forum CAFA guarantees. The Jeppsson Declaration was completed on September 10, 2026, a month after the removal deadline. (*See* Jeppsson Decl.). Yorozu could not have been expected to forecast with crystal clarity, before Jeppsson's work was even finished, how this Court would resolve traceability. And again, punishing a defendant with fees in this instance would not only dissuade defendants from removing under CAFA, but also provide an avenue for class plaintiffs with injury and traceability problems to avoid CAFA altogether—a result wholly at odds with the Act's purpose.[15]

No controlling precedent renders Yorozu's position "frivolous" or "insubstantial." The Sixth Circuit has not addressed whether a data breach plaintiff can establish traceability where the same information was already compromised in prior, unrelated breaches. A court in this Circuit has found traceability lacking on a comparable factual record. *Polkowski*, 2025 U.S. Dist. LEXIS 217278, at *15–20. In fact, as far as Yorozu is aware, *Polkowski* is the only district court from within this circuit to address a factual attack on traceability in a data breach case. Courts remain divided on whether a court must independently analyze standing in this posture. *Compare Mocek*

[15] As in *Brahamsha*, Yorozu had no other route to a federal ruling. If the Court were to find traceability satisfied, then these cases would proceed here under CAFA's uncontested grant of jurisdiction. No Tennessee court could have issued a ruling on standing before Yorozu's removal deadlines expired. *See* 2017 U.S. Dist. LEXIS 110951, at *19–20.

*with Katz*. By demanding that courts independently analyze subject matter jurisdiction, even when the parties do not brief that issue, the Sixth Circuit strongly suggests that it would follow the *Katz* line of cases. *See Burt*, 132 F.4th at 401. Plaintiffs posit that, at the time of removal, Yorozu should have foreseen with certainty how questions on traceability and jurisdiction would be decided. As the above authority makes clear, Plaintiffs' argument in this regard is devoid of merit.

**3. Removal Is Objectively Reasonable When There Is a Split in or Lack of Authority on a Key Contested Issue.**

In *Lott*, the Seventh Circuit held it was error to award fees upon remand when the removing defendant faced an unsettled legal landscape at the time of removal. 492 F.3d at 791. As that court observed, "Although CAFA, by its terms, applies only to 'civil actions commenced on or after the date of enactment of the Act,' Pfizer filed a notice of removal in federal district court" in a case that had been in state court just prior to CAFA's enactment. *Id.* at 790-791. "Pfizer argued that the case 'commenced' on the date that it was removed to federal court, not the date on which the plaintiffs filed their complaint." *Id.* at 791. The district court disagreed, remanded, and awarded fees. *Id.* The Seventh Circuit reversed. "When Pfizer filed its notice of removal, no circuit court had rejected Pfizer's argument that the word 'commenced' means the date on which a case is removed to federal court." *Id.* at 793. District courts had gone both ways on this question. *Id.* "District court decisions, let alone conflicting district court decisions, do not render the law clearly established. Accordingly, Pfizer acted reasonably when it attempted to remove this case under CAFA." *Id.*; *see also Ind. State Dist. Council of Laborers & Hod Carriers Pension Fund v. Renal Care Group, Inc.*, 2005 U.S. Dist. LEXIS 24210, *6-7 (M.D. Tenn. Aug. 18, 2005) (Trauger, A.) (quoting *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993)) (denying fees when remand involved an area of law that was unsettled, reasoning that "given that there is no case law interpreting the relevant exception to the Class Action Fairness Act, the court cannot find that

such an award would be 'fair and equitable under all the circumstances'").

Yorozu wants a decision from the Court on the key question of traceability. Plaintiffs do not. There is no circuit authority directly holding that a court can (or cannot) rule on a standing challenge after a CAFA removal, and the district courts are split on this question. *Lott* and *Morris*'s reasoning is directly applicable here.[16] The Court should deny Plaintiffs' request for fees and costs.

## IV. CONCLUSION

The difficulty of tracing a data breach plaintiff's alleged harm to a particular breach—rather than to any of the many other entities that hold the same data—is often a theoretical problem when the pleadings are viewed only on their face.[17] It is not theoretical here. An unrebutted factual record establishes that every Plaintiff's Social Security number was already exposed in the National Public Data breach, that Plaintiffs' compromised credentials predate and are independent of this incident, and that the RansomHub leak site has been inactive since March 2025. (*See* Jeppsson Decl.). Plaintiffs offer no evidence in response, and they provide no legal argument on why *Polkowski* got it wrong. The Court can and should decide traceability on this record.

Yorozu requests that the Court: (1) independently determine whether each Plaintiff has Article III standing, beginning with traceability, and enter findings on the existing record before ruling on Plaintiffs' Motions to Remand; and (2) deny Plaintiffs' request for attorneys' fees.

---

[16] "If fee shifting were automatic, defendants might choose to exercise this right only in cases where the right to remove was obvious." *Martin*, 546 U.S. at 140. There is "no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Id.* Asking for fees in the face of the *Mocek* and *Katz* split seeks the result that *Martin* forbids—i.e., discouraging defendants from removing in "all but obvious" cases.

[17] *See* Grayson Wells, Comment, *What's the Harm? Federalism, the Separation of Powers, and Standing in Data Breach Litigation*, 96 Ind. L.J. 937, 949 (2021) ("Some may argue that traceability is difficult given the problems in knowing whether a particular malicious actor obtained the consumer's data from the complained of breach or from another source—especially given how many entities collect consumer data.").

Dated: October 9, 2026

Respectfully submitted,

*/s/ Jonathan O. Harris*
Jonathan O. Harris, Esq., TN Bar No. 21508
John R. Adams, Esq., TN Bar No. 39284
JACKSON LEWIS P.C.
CitySpace
611 Commerce Street, Suite 2803
Nashville, TN 37203
Telephone: (615) 565-1661
Facsimile: (615) 206-2244
john.adams@jacksonlewis.com
jonathan.harris@jacksonlewis.com

*Attorneys for Defendant*
*Yorozu Automotive Tennessee, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jonathan O. Harris*
Jonathan O. Harris

4923-8715-2599, v. 1